M. Jonathan Hayes (Bar No. 90388)
**Law Office M. Jonathan Hayes**
9700 Reseda Blvd. Suite 201
Northridge, California 91324
Telephone: (818) 882-5600
Facsimile: (818) 882-5610
jhayes@polarisnet.net

Attorney for Debtor
Ian F. Mitchell

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>IAN F. MITCHELL,<br><br>        Debtor. | CASE NO.: 1:09-bk-23919-GM<br><br>Chapter 11<br><br>**REPORT ON 1255 NO. BUNDY AVE.**<br><br>Date: December 18, 2009<br>Time: 10:00 a.m.<br>Ctrm: 303 |

TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE,

**LAW OFFICES**
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

1

REPORT ON 1255 NO. BUNDY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Ian Mitchell ("the Debtor"), Debtor in-Possession in the above-referenced Chapter 11 case, commenced his bankruptcy case on October 21, 2009.

The Debtor filed his chapter 11 petition to give himself a chance to reorganize his financial affairs. He is named in a number of lawsuits and the plaintiff in one suit, Masjedi v. Mitchell, obtained an attachment against him within the past 90 days. The difficulties with the property located at 1255 No. Bundy were not the reason this chapter 11 was filed.

After hearing on December 15, 2009, Mr. Mitchell and counsel met in the courthouse for about an hour with Mr. Fuentes from the City and updated each other on the events surrounding the property and discussed resolution of the issues.

Mr. Mitchell will testify to the below facts at the hearing on December 18, 2009. This report is intended to give the court and parties an overview of the project.

## II. STATEMENT OF FACTS

In July of 2007, Mr. Mitchell first learned about 1255 North Bundy Drive, Brentwood (hereinafter "Bundy"). He received a telephone call from Richard Sherwood, a local real property designer and builder, who had been a client of his for about three years. Sherwood had completed his most recent project on Roscomare in Bel Air, and was anxious to sell that property and in turn purchase Bundy. Sherwood called Mitchell because he had brokered loans for him in the past. Sherwood had graduated from USC School of Design in the 1960s and was very well connected in the world of architecture. He would complete and sell a project about every two years, taking advantage of the lower long term capital gains of a primary residence. The Bundy project appeared to have a much greater potential gain than Sherwood had seen on other properties, although it had several unique challenges.

LAW OFFICES
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

2

REPORT ON 1255 NO. BUNDY

Sherwood and Mitchell began an investigation of the Bundy Project, including appraisals and the pursuit of financing. The potential value of the property exceeded $4,000,000.00, with a then current purchase price of just over $1,700,000.00. It is a 50 year old, 6,000 sq ft property on an acre of land.

Sherwood was convinced he could make the necessary repairs and improvements for about $500,000.00. The profit potential was good, but Sherwood had difficulty qualifying for the loan because he had previously done projects of about half the size of Bundy. His search for financing included hard money as well as institutional sources, but he was unable to secure financing. Sherwood asked Mitchell to get involved, and after careful consideration, Mitchell agreed to structure an arrangement with Mitchell as borrower.

Mitchell retained an attorney, Bret Carter, of Hart Watters and Carter, to assist them in creating an agreement with Sherwood and with an entity formation. They formed the 1255 N. Bundy LLC and created a development agreement that designated Mitchell as owner and guarantor of the loan. Sherwood and Mitchell agreed to complete renovations that Sherwood had suggested and sell the property at a profit, with the option for either party to buy the other party out. Mitchell would have moved into the property depending on market conditions, in other words, if it could not be sold when the renovations were completed. Mitchell could not transfer the property to the LLC until the construction was completed. He recorded a quitclaim deed in the summer of 2009 to 1255 No. Bundy LLC.

Mitchell had substantial investments with MAM Wealth Management, a licensed broker dealer, ("MAM") at the time and MAM agreed to commit additional capital to the project as an investor. A loan of $2,600,000, which included the acquisition, improvements, interest reserves, and development fees for Sherwood was approved by IndyMac Bank. The loan provided for draws as the construction work was completed. The project required an influx of about $500,000.00 as a starting investment and Sherwood was not capable of contributing the capital. The capital came from Mitchell and MAM.

LAW OFFICES
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

1  The project began in January of 2008 and was scheduled for twelve month
2 completion date. Sherwood was an experienced designer and builder, and IndyMac
3 performed weekly inspections of the progress. Sherwood moved into the property at that
4 time and remained there until he vacated the property in January 2009 when Mitchell
5 kicked him out. The property has been vacant since that time.

6  Mitchell obtained a permit to repair the west hillside but could not obtain
7 permission from the Santa Monica Mountain Conservancy (hereinafter "SMMC") to
8 access their portion of the hillside to complete the repair. The neighbor, Alan Rader,
9 agreed to assist Sherwood in obtaining the necessary SMMC agreement. It was a good
10 nine months before there was meaningful progress. In September, 2008 SMMC required
11 that Mitchell sign an indemnification agreement to hold them harmless should there be a
12 landslide and gave them access to repair the hillside. This was recorded. Mr. Rader had
13 been instrumental in solving the SMMC problem, and had a good working relationship
14 with Sherwood.

15  About the same time, completely without the knowledge or consent of Mitchell,
16 Sherwood began illegally removing hillside supports on the east front hillside and
17 replacing them with new masonry walls. He removed railroad ties that were supporting the
18 slope which exacerbated the problem. This activity occurred along the shared driveway
19 with the Mr. Rader's property. Mitchell understands that this was done with Mr. Rader's
20 knowledge and consent but does not know that for certain. Mitchell was not aware that
21 this work was being done until later.

22  In late October, 2008 Mitchell received an urgent telephone call from Sherwood
23 asking to meet at the property to discuss issues and concerns with the build. When he
24 arrived, Sherwood informed him that the City of Los Angeles had ordered the work along
25 the driveway to be stopped and corrected. Mitchell also learned about, and became greatly
26 concerned with, the quality of the work being performed and the inadequate inspections
27 done by IndyMac. Sherwood then requested an additional $250,000.00 to complete the
28 project and driveway failures.

**LAW OFFICES**
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

4

REPORT ON 1255 NO. BUNDY

1    Because of the City Order, Mitchell ordered a soil engineering study in December
2 and then later hired a civil engineer to complete the design of the retaining walls in the
3 front. He obtained a grading permit and a plan check, again for the rear only because that
4 is what the City's initial concern was. The projected costs for these repairs were far
5 greater than originally estimated. During January through March of 2009, an additional
6 $100,000.00 was spent correcting code violations in the front living area of the house. The
7 first half of 2009 was spent assessing the damage, correcting many of the violations and
8 exploring options: completing or selling the property.
9    Mitchell obtained an offer from a buyer for $1,600,000.00, but it was rejected by
10 IndyMac. The bank then required that Mitchell list the property for sale, which he did on
11 August 4, 2009 by listing it with Coldwell Banker Realtors. They set the price at
12 $2,400,000. On October 6, 2009, Mitchell received an offer for $650,000 which included
13 a proposal to do all the remediation work required, estimated to cost $2 million. Mitchell
14 accepted the offer subject to the approval of IndyMac Bank. IndyMac did not respond to
15 this offer until this week. On Tuesday December 15, Mitchell received a response from
16 Marisa Broyles of IndyMac Bank saying that they had received the correspondence and
17 that the short sale offer was expected to be presented to the senior management committee
18 by Friday, December 18.
19    Mitchell is prepared to sell the Bundy Property. It is evident from the
20 comprehensive offer that the property has greater liability than it does value. The realtor is
21 maintaining contact with the buyer and the bank in order to preserve the possibility of a
22 sale. Mitchell only needs a response from the bank, in the form of an acceptance or counter
23 offer, or the bank could foreclose and assume the liability.
24    Mitchell is taking all the temporary precautions available to mitigate any additional
25 soil erosion or danger to the neighboring properties. Mitchell put up plastic and sandbags
26 on the rear area after the hearing on December 15. On December 17, the city was called to
27 inspect the that work. A month ago they put up plastic and sand bags on the front east
28 slope. Mitchell is sure the City will check that work also if they haven't already done so.

**LAW OFFICES**
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

5

REPORT ON 1255 NO. BUNDY

Mitchell is believes that the plastic and sand bags substantially protect the neighbors. He is prepared to take any further action deemed necessary by the City of Los Angeles to insure the safety of the property and neighborhood. The total work to be completed to fix the problems will take six months to a year and would cost in excess of $2 million (per the October 6, offer).

A package of information is attached hereto. It includes communications between the brokers, Mitchell's counsel and the bank. It includes the latest offer made on the property.

Dated: December 17, 2009

By:    /s/ M. Jonathan Hayes
     M. Jonathan Hayes
     Attorney for Debtor
     Ian Mitchell

**LAW OFFICES**
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

6

REPORT ON 1255 NO. BUNDY

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 9700 Reseda Blvd., Ste 201, Northridge, CA 91324.

The foregoing document described as **NOTICE OF MOTION AND MOTION OF DEBTOR IN POSSESSION FOR AUTHORITY TO USE CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF IAN MITCHELL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/17/09 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Scott C Clarkson     sclarkson@lawcgm.com
- Christine M Fitzgerald     cfitzgerald@lawcgm.com
- M Jonathan Hayes     jhayes@polarisnet.net
- Yale K Kim     ykim@allenmatkins.com
- Kary R Kump     dolores@jfarley.com
- David F Makkabi     cmartin@pprlaw.net
- S Margaux Ross     margaux.ross@usdoj.gov
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On **12/17/09,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/17/**09** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge hise constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Hon. Geraldine Mund**
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

John A. Crose, atty for Alan Rader     jcrose@icclawfirm.com

LAW OFFICES
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

7

REPORT ON 1255 NO. BUNDY

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/17/09 | MJ Hayes | /s/ MJ Hayes |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**LAW OFFICES**
M. Jonathan Hayes
9700 Reseda Blvd. Suite 201
Northridge, CA 91324

REPORT ON 1255 NO. BUNDY