M. Jonathan Hayes (Bar No. 90388)
Roksana Moradi (Bar. No. 266572)
**Law Offices of M. Jonathan Hayes**
9700 Reseda Boulevard, Suite 201
Northridge, California  91324
Telephone:  (818) 882-5600
Facsimile:  (818) 882-5610
jhayes@polarisnet.net

Attorneys for Debtor
Ian F. Mitchell

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-23919-GM |
| IAN F. MITCHELL, | Chapter 11 |
| Debtor. | **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN** |
| | **Disclosure Statement Hearing** |
| | Date:  May 25, 2010 |
| | Time: 10:00 a.m. |
| | Place: |

# Contents

**I. INTRODUCTION** ........................................................................................... **6**

   A. PURPOSE OF THIS DOCUMENT .................................................. 6

   B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ...................................................................................... 7

   C. TIME AND PLACE OF THE CONFIRMATION HEARING ....................... 8

   D. Deadline For Voting For or Against the Plan .................................... 8

   E. Deadline For Objecting to the Confirmation of the Plan .................... 8

   F. Identity of Person to Contact for More Information Regarding the Plan ............................................................................................ 8

   Disclaimer ......................................................................................... 9

   G. Important Notices and Cautionary Statements ................................ 9

**II. BACKGROUND** ......................................................................................... **10**

   A. Description and History of the Debtor's Business ............................ 10

   B. Principals/Affiliates of Debtor's Business ..................................... 10

   C. Management of the Debtor Before and After the Bankruptcy ........... 12

   D. Events Leading to Chapter 11 Filing .............................................. 12

   E. Significant Events During the Bankruptcy ...................................... 12

      *1. Bankruptcy Proceedings* ........................................................ 12

      *2. Other Legal Proceedings* ....................................................... 15

      *3. Claims Objections* ................................................................ 17

      *4. Adversary Proceedings* .......................................................... 17

      *5. Actual and Projected Recovery of Preferential or Fraudulent Transfers* ........................................................ 17

      *6. Procedures Implemented to Resolve Financial Problems* ........... 17

      *7. Current and Historical Financial Conditions* ........................... 18

**III. SUMMARY OF THE PLAN OF REORGANIZATION** ................................... **18**

   A. GENERAL OVERVIEW ............................................................... 18

   B. UNCLASSIFIED CLAIMS ........................................................... 18

C.   ADMINISTRATIVE EXPENSES ................................................................. 19

D.   PRIORITY TAX CLAIMS ........................................................................... 19

E.   CLASSIFIED CLAIMS AND INTERESTS .................................................. 20

**Class 1 -** *Secured Claim of The Bank of New York Mellon et al c/o BAC Home Loans Servicing, LP* ................................. 20

**Class 2 -** *Secured Claim of Bay Area Financial* ........................ 21

**Class 3 -** *Secured Claim of Lori Chevalier* ................................ 21

**Class 4 -** *Secured Claim of Banco Popular* ............................... 22

**Class 5 -** *Secured Claim of Bay Area Financial* ........................ 23

**Class 6** - *Secured Claim of One West Bank* ............................... 23

**Class 8 -** *Secured Claim of Chase Home Loans* ......................... 25

**Class 9 -** *Secured Claim of Phillip Schoenwetter* ...................... 25

**Class 10 -** *Secured Claim of Peter Mitchell* .............................. 26

**Class 11 -** *Secured Claim of One West Bank* ............................. 26

**Class 12 -** *Secured Claim of One West Bank* ............................. 27

**Class 13 -** *Secured Claim of Los Angeles County Tax Assessor* ............. 27

**Class 14** – *Priority Unsecured Claims* ....................................... 28

**Class 15** – *Unsecured Claims* .................................................... 28

Class of Interest Holders ............................................................ 29

**Class 16** – Debtor ....................................................................... 29

F.   Means of Performing the Plan ........................................................... 29

1.   *Funding for the Plan* ............................................................ 29

2.   *Management of the Reorganized Debtors* .............................. 29

3.   *Disbursing Agent* ................................................................. 29

4.   *Distributions* ....................................................................... 30

G.   RISK FACTORS .......................................................................... 30

H.   OTHER PROVISIONS OF THE PLAN ........................................... 30

1.   Executory Contracts and Unexpired Leases ............................ 30

2. Changes in Rates Subject to Regulatory Commission Approval ..................... 31

3. Retention of Jurisdiction. ................................................................................. 31

I. TAX CONSEQUENCES OF THE PLAN ..................................................... 32

**IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ......................... 32**

A. WHO MAY VOTE OR OBJECT ................................................................. 33

1. *Who May Object to Confirmation of the Plan* ............................... 33

2. *Who May Vote to Accept/Reject the Plan* ..................................... 33

3. *Who is Not Entitled to Vote* .......................................................... 34

4. *Who Can Vote in More Than One Class* ........................................ 35

5. *Votes Necessary to Confirm the Plan* ........................................... 35

6. *Votes Necessary for a Class to Accept the Plan* ........................... 35

7. *Treatment of Non-accepting Classes* ............................................ 35

8. *Request for Confirmation Despite Non-acceptance by Impaired Classes* ........................................................................... 36

B. LIQUIDATION ANALYSIS ......................................................................... 36

1. Feasibility ....................................................................................... 38

**VI. EFFECT OF CONFIRMATION OF PLAN ........................................................ 39**

1. Discharge ......................................................................................... 39

2. Revesting of Property in the Debtors .............................................. 39

3. Modification of Plan ....................................................................... 40

4. Post-Confirmation Employment and Compensation of Reorganized Debtors' Professionals .............................................. 40

5. Post-Confirmation Status Report ..................................................... 40

6. Post-Confirmation Conversion/Dismissal ....................................... 41

7. Final Decree ..................................................................................... 41

SUPPORTING DECLARATION ................................................................. 42

EXHIBIT A - LIST OF ALL ASSETS ......................................................... 43

REAL PROPERTY ....................................................................................... 43

Corporate Entities ......................................................................................... 44

OTHER ASSETS ................................................................................................. 45

EXHIBIT C ......................................................................................................... 48

LIST OF CREDITORS/CLAIMS ....................................................................... 48

# I. **INTRODUCTION**

On October 21, 2009, IAN F. MITCHELL, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq. he is hereinafter referred to as the "Debtor." This document is the Chapter 11 Disclosure Statement. Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization (the "Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the proponent (the "Proponent") of the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

In summary, this Plan provides for payment to holders of allowed claims. The timing of Plan payments to particular creditor groups will depend upon their classification under the Plan. The Effective Date of the Plan shall be the first Business Day, (a) that is 11 calendar days after the Confirmation Date, or (b) at least one Business Day after the Confirmation Date, if the Bankruptcy Court enters an order making Bankruptcy Rule 7062 inapplicable to the proceedings respecting the Confirmation Order or otherwise determining that the Effective Date may occur immediately following confirmation.

## A. **PURPOSE OF THIS DOCUMENT**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

      **(1)**      **WHO CAN VOTE OR OBJECT;**

**(2)      WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

**(3)      THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

**(4)      WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

**(5)      WHAT IS THE EFFECT OF CONFIRMATION;**

**(6)      WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own legal counsel to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court (the "Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

## B.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE**

1  **DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS**

2  **CASE.**

3  **C.   TIME AND PLACE OF THE CONFIRMATION HEARING**

4  The hearing where the Court will determine whether or not to confirm the Plan will

5  take place on ---------------------, 2009, at --:00 AM in Courtroom -, ----------------,

6  Woodland Hills, CA 90----.

7

8  **D.   DEADLINE FOR VOTING FOR OR AGAINST THE PLAN**

9  If you are entitled to vote, it is in your best interest to timely vote on the enclosed

10  ballot and return the ballot to counsel for the Debtor at the following address:

M. Jonathan Hayes<br>
9700 Reseda Blvd, Ste 201<br>
Northridge, CA 91324

13  **Your ballot must be received by 5:00 p.m. PST on -------------- or it will not be**

14  **counted.**

15

16  **E.   DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN**

17  Objections to the confirmation of the Plan must be filed with the Court and served

18  so that any objections are actually received by counsel for the Debtor by 5:00 p.m. PST on

19  ----------------------------.

20

21  **F.   IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION**

22  **REGARDING THE PLAN**

23  Any interested party desiring further information about the Plan should contact

24  counsel for the Debtor, M. Jonathan Hayes, 9700 Reseda Blvd, Suite 201, Northridge, CA

25  91324, 818.882.5600 or jhayes@polarisnet.net.

26

27

28

## DISCLAIMER

The financial data relied upon in formulating the Plan is based on the Debtor's books and records and historical financial statements. The Debtor represents that the information contained in this Disclosure Statement is true and correct to the Debtor's best knowledge.  The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## G.   IMPORTANT NOTICES AND CAUTIONARY STATEMENTS

The liquidation analysis, estimates and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtor with the assistance of their professional advisors.  Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the Debtor and third parties, all of which information has not been audited. *The Debtor's professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.*  Moreover, although reasonable efforts have been made to provide accurate information, the Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

***No entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.***  Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

# II.

# BACKGROUND

## A.  DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS

Ian Mitchell ("the Debtor") is an individual who is married to Maria Rivas.  Mrs. Mitchell is not a debtor in any bankruptcy proceeding.  They have two sons and live in their home at 3609 Seahorn Drive, Malibu, CA 90265.  They also own five rental properties all located in San Pedro.  The Debtor is a mortgage broker.  Mrs. Mitchell is a part time fitness instructor.

The Debtor operates his mortgage business through a newly formed entity: Mitchell Group Partners, Inc. (the "Mitchell Group").  This entity is wholly owned by the Debtor and is an S Corporation.  It has no employees other than the Debtor.  It has independent sales persons who work on straight commissions.  Mitchell Group occupies space at 11400 Olympic Blvd., 17th Floor, Los Angeles, CA 90064.  The space is subleased from Pinnacle Bancorp for approximately $4,000 per month.

Prior to opening his own mortgage business, the Debtor worked for 14 years at First Capital Mortgage as a broker.


## B.  PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS

Other than Mitchell Group Partners, Inc., the Debtor owns the following interests in the following corporate entities:

| Name of Entity | % owned | Business and status |
|---|---|---|
| I F Mitchell Mortgage, Inc. | 100% | This entity is defunct.  It has a bank account but no other assets; no employees. |
| Serious Music, LLC | 100% | This entity owns the rights to certain music with unknown value but believed to be very little; this entity has not operated for several |

| | | |
|---|---|---|
| | | years.  It has no employees and no debts. |
| Luly, LLC | 100% | This entity makes and sells aerobics videos.  It is operated by the Debtor's wife.  It has no employees other than Maria Mitchell. |
| Mam Wealth Real Estate Fund I, LP | Debtor is one of three members of MAMW RE Fund, LLC, General Partner of this Limited Partnership. | This entity owns a group of LLCs which in turn own various properties.  The Debtor is not active in the day to day operations of the business.  Other Members of the GP are Alejandro Martinez and Raphael Sanchez who are unrelated to the Debtor. |
| 1255 No. Bundy, LLC | Debtor is the managing member and one of two members.  His membership interest is 51%. | This entity owns a single family residence located at 1255 No. Bundy in Brentwood, CA.  The property requires significant remediation to the front and rear slopes.  The property is worth significantly less than the mortgages against it.  The entity owns no other assets. |
| | | |

In addition to their home, the Debtor and his wife also own five rental properties located in San Pedro, CA.  All real property of the Debtor is owned by the Ian F. Mitchell and Maria De Lourdes Rivas Mitchell, Trustees of the Mitchell Family Living Trust dated August 11, 1999.   The rental properties are managed by Scott Brody, an unrelated individual, who collects the rent and pays the operating expenses.  448 & 239 14th Street were managed by Properties West Management Co. until late October, 2009 but are now managed by Brody who collects all rents.

### C.  MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE BANKRUPTCY

The Debtor is an individual and manages his businesses himself.

### D.  EVENTS LEADING TO CHAPTER 11 FILING

The most immediate reason the Debtor filed this chapter 11 was that a creditor, Shannon Masjedi, had obtained a writ of attachment against the Debtor and was seizing his funds and placing liens on his properties.  The chapter 11 was filed to permit the liens to be removed as preferences so that the value of the Debtor's property can be used to pay all creditors pro-rata.  The Debtor also believed that he needed to propose a plan to all of his creditors to resolve the numerous legal and financial issues facing him at one time and on a global basis.

### E.  SIGNIFICANT EVENTS DURING THE BANKRUPTCY

*1.  Bankruptcy Proceedings*

The Debtor filed this case on October 21, 2009.  On October 30, 2009, he filed his Schedules A through J, Statement of Financial Affairs, Disclosure of Attorney Compensation, Debtor's Certificate of Employment and Statement of Current Income.

On November 10, 2009, the Debtor filed an Application to Employ M. Jonathan Hayes as his general bankruptcy counsel.  The Court entered its order approving the Application on December 15, 2009.  The Debtor also sought permission to employ Scott Property Group, Inc. as his property manager and an Order approving that application was entered on March 24, 2010.

The Debtors attended the meeting of creditors conducted by the United States Trustee's Office on January 12, 2010.  He is substantially in compliance with the rules and regulations of the Office of the United States trustee.

The Court set a Status Conference in this case for December 15, 2009.  The Debtor filed a Status Report as required prior to the hearing.  The Status Conference has been continued a number of times and is now set for April 27, 2010.

On December 11, 2009, the Debtor filed a Motion to Use Cash Collateral seeking permission to use the rent from the Debtor's five rental properties.  The Court entered its Order on February 13, 2010 approving the requested use.

On December 31, 2009, the Court entered its Order setting February 10, 2010 as the last day for filing Proofs of Claim and Proofs of Interest in this case.  The Debtor's counsel gave notice of this "Bar Date" to all creditors on December 23, 2009.

The Debtor is being audited by the Internal Revenue Service for 2008.

On January 25, 2010, Deutsche Bank National Trust Company filed a Motion for Relief from Stay seeking to foreclose on the Debtor's raw land located in Topanga.  The Debtor and Deutsche agreed that the Debtor would make the regular monthly payments to Deutsch and catch up the three past due post-petition payments over six months.

On March 16, 2010, secured creditor Bar Area Financial filed two Motions for Relief seeking relief from stay to foreclose their interests in the Debtor's real property located at 623 W. 8th Street and 804 S. Leland St, both in San Pedro.  At the hearing on April 6, 2010, the Court ordered the Debtor to continue to pay the senior lien on 8th St to Banco Popular and pay Bay Area $4,517 beginning in April, 2010 and each month thereafter as adequate protection.  As to the Leland property, the court ordered the Debtor to pay $6,000 to the senior lienholder and to provide an appraisal to Bay Area and continued the hearing to April 20, 2010.

### **Rader v. Mitchell Proceedings**:

In late, 2007, the Debtor entered into an agreement to buy real property at 1255 No. Bundy,  Brentwood.  Alan Rader and Amy Efron are the next door neighbors.  The Debtor purchased the property as an investment but also with an eye towards moving into the

property.  The property required considerable renovation including repair of the hillside to

the rear of the property and the loan from IndyMac of $2.6 million to purchase the

property included funds for construction and repairs.  The construction was to be

completed by Richard Sherwood who was living in the property at the time.

The project began in January of 2008 and was scheduled for twelve month end date.

Sherwood was an experienced designer and builder, and IndyMac performed weekly

inspections of the progress.

The Debtor succeeded in obtaining a permit to repair the west hillside but could not

obtain permission from the Santa Monica Mountain Conservancy (hereinafter "SMMC")

to access their portion of the hillside to complete the repair.  The neighbor, Alan Rader,

assisted in obtaining the necessary SMMC agreement but it took about nine months.

About the same time Sherwood began illegally removing hillside supports on the

east front hillside and replacing them with new masonry walls. This activity occurred

along the shared driveway with the Rader's property and created considerable difficulties

for the Rader's ingress and egress to their home.  Mr. Sherwood filed a chapter 13

Bankruptcy Petition in the Northern District of California, Case No. 09-33309.

In late October, 2008, the City of Los Angeles ordered the work along the driveway

to be stopped and corrected.  There were also concerns about the quality of the work being

performed and the inadequate inspections done by IndyMac.  The projected costs for the

repairs were far greater than originally estimated.

The first half of 2009 was spent with developers and consultants assessing the

damage and exploring options: completing or selling the property.   The Raders filed suit

in Los Angeles Superior Court in October 9, 2009, which action is pending.  The City has

issued a series of Orders to Comply concerning the slope failure.

The Debtor listed the property for sale "as is" in mid-2009 at $2,400,000.00.  The

most recent offer is from Richard Loring for $575,000.  Mr. Loring would agree to

complete all of the remediation.  IndyMac, now OneWest Bank, has been unwilling to agree to the short sale.

At the first Status Conference in this bankruptcy case, Rader appeared and requested orally that the court appoint a chapter 11 trustee on the basis that the Debtor was not complying with the City of Los Angeles order to the required remediation.  The Court set an evidentiary hearing for three days later and on that date the Debtor and Rader entered into a stipulation that authorized the court to enter its order requiring the Debtor to enter into a contract to complete certain required repairs to the Bundy Property "rear slope" and to enter into a contract to have engineering plans developed for the required remediation to the "front slope."  The order was entered on February 22, 2010.

In February, 2010, the Debtor and OneWest Bank agreed to relief from stay to OneWest Bank to proceed with its Judicial Foreclosure proceeding in state court.  The Court entered its order granting that relief on March 5, 2010.  OneWest Bank has filed a proof of claim asserting a debt of $2,624,921.  Also in February, 2010, the Debtor and Rader agreed to relief from stay to allow the *Rader v. Mitchell* et al action to proceed in Superior Court.  The Court entered its Order approving that stipulation on -----, 2010.

The Raders have filed a Proof of Claim for $1.5 million with no substantiation for that amount.  The Debtor will object to the POC once the state court matter has been resolved.

The Debtor has made demand on his insurance company for a defense in the Rader v. Mitchell action and is awaiting a response from the insurance company.

### 2.   *Other Legal Proceedings*

The Debtor is named as a defendant in the following litigation:

- *Rader v. Ian Mitchell* et al, SC105215, Superior Court Santa Monica
  - Suit by neighbors re landslide issues with respect to the real property located at 1255 No. Bundy, Brentwood, CA.

- o The Debtor and Rader have agreed to relief from the automatic stay to allow this action to proceed in state court to judgment.

- *Schmitz v. Ian Mitchell*, SC103538, Superior Court, Santa Monica

  - o Suit for collection of disputed $120,000 alleged owed. Schmitz is an "entitlement" company. Obtained entitlements for raw land. The Debtor has settled this proceeding subject to approval by the Bankruptcy Court. The settlement is the agreement by the Debtor not to object to the claim of Schmitz in the amount of $100,000.

- *IndyMac Venture, LLC v. Ian Mitchell* et al, BC423528, Superior Court Central

  - o Judicial foreclosure on 1255 N. Bundy property. The property is owned by 1255 N. Bundy, LLC.

  - o Relief has been granted to OneWest Bank, successor to IndyMac to permit this proceeding to go forward in state court.

- *Masjedi v. Ian Mitchell*, SC101558, Superior Court Beverly Hills (Cross-complaint *Duni and Steele v. Mitchell*) The Cross-complainant in this matter obtained an attachment order within the preference period.

  - o Masjedi was a co-borrower on a loan made by Duni and Steele to Masjedi. Masjedi sued Duni and Steele for usury etc. Duni and Steele cross complaint against the Debtor on the debt and various other theories.

  - o Duni and Steele have filed a non-dischargeability complaint against the Debtor in this adversary proceeding which is pending.

These actions have all been stayed by the bankruptcy filing.

As stated above, the Debtor has been ordered by the City of Los Angeles to complete certain required remediation at 1255 No. Bundy. There has been no activity in that proceeding other than the meetings between the Debtor and the City basically updating the City with the Rader v. Mitchell proceedings.

### 3.  Claims Objections

The Debtor has not yet filed objections to any claims and is still investigating the need to do so.

### 4.  Adversary Proceedings

On March 15, 2010, Stephen Steele and Brad Duni filed an adversary proceeding against the Debtor seeking a finding of non-dischargeability of the purported debt owed by the Debtor to them.   The Debtor intends to aggressively defend himself in that matter.  A Status Conference is set for May 12, 2010.

The Debtor will file an adversary proceeding against Duni and Steele to set aside the attachment lien they obtained prior to the petition date.

### 5.  Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor has investigated potential claims under Bankruptcy Code sections 547 and 548.  Upon completion of such investigation, the Debtor has determined that there are no viable actions for avoidance and recovery of preferential and fraudulent transfers.

### 6.  Procedures Implemented to Resolve Financial Problems

As is set forth above, the Debtor formed a new company, Mitchell Group Partners, Inc. which uses a dba, Pinnacle Mortgage Partners, and sources mortgage business from many of the clients he developed at First Capital Mortgage since 1995.  Pinnacle Mortgage Partners is in the process of setting up partnerships (ABA's – affiliated business arrangements) with real estate groups such as Abbot Kinney Real Estate in Venice.  This will allow a deeper building of business relationships and revenues.

The Debtor also intends to either relinquish the 804 Leland Project to an organization for sale of condominiums, or liquidate the 4-Unit Project.  This removes a

primary burden from his balance sheet, and allows him to cash –flow positively on the remainder of real estate owned.

### 7.   *Current and Historical Financial Conditions*

The identity and fair market value of the estate's assets are listed in **Exhibit A**.  The Debtor's income and expense budget is attached hereto as **Exhibit B.**

## III.   SUMMARY OF THE PLAN OF REORGANIZATION
## A.   GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests.  The Plan designates which classes are impaired and which classes are unimpaired.  The Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. § 1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed, notwithstanding the lack of acceptance by the Members, the Proponent may seek to impose the Special Assessment under applicable law**.**

## B.   UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified.  Holders of unclassified claims not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan.

## C.  ADMINISTRATIVE EXPENSES

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  The following is an estimate of the Section 507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| M. Jonathan Hayes (Attorney for the Debtors) | $60,000 (estimated).  This balance is net of the pre and post-petition retainers received of $33,000. | Paid in full on the later of (a) Effective Date of Plan or (b) Court approval of requested fees unless the parties agree to other treatment. |
| Clerk's Office Fees | $0  (estimated | Paid when due |
| Office of the U.S. Trustee Fees | $325 - $750 per quarter (estimated) | Quarterly fees, as required by 28 U.S.C. § 1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |
| TOTAL | $60,000 | |

## Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court.  Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

## D.  PRIORITY TAX CLAIMS

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash

payments, over a period not exceeding five years from the petition date.  The Debtor does not believe that he has any outstanding tax obligations.  As stated above, the Debtor is being audited by the Internal Revenue Service for 2008.

## E.   CLASSIFIED CLAIMS AND INTERESTS

### Class 1 - *Secured Claim of The Bank of New York Mellon et al*
### *c/o BAC Home Loans Servicing, LP*

Claim/Collateral:  The Bank of New York Mellon has an estimated claim of $1,008,578 according to its proof of claim which is secured by a first priority deed of trust on the Debtor's rental property located at 804 S. Leland, San Pedro, CA (the "Leland Property").

Impaired/Not Impaired: The Class 1 Claim is impaired under the Plan.

Treatment: The Debtor will do one of two things with this debt and this property at the option of Bay Area Financial, Class 2:  He will transfer the Leland Property into a new LLC to be owned by himself and a new investor; or, he will stipulate to relief from stay and allow Bay Area Financial to foreclose.  In the event that Bay Area agrees to permit the transfer and refrain from foreclosing for one year, the obligation of the Debtor to BAC on its Class 1 Claim will be paid by the new LLC in monthly installments of $4,497 until paid in full.  The first payment will be made on April 1, 2010 and will continue every month thereafter on the first of each month until April 1, 2040 with a balloon payment of the full amount then due on April 1, 2015.  Until paid in full, the debt will accrue interest at the rate of 6% fixed per annum.  The remainder of the Class 1 claim will be treated with and paid with the unsecured creditors class 15.

Comments:    The property securing this lien, a four-plex which is fully occupied, is valued by the Debtor at $760,000 as of the petition date, or $190,000 per unit.  On the petition date, the Debtor was in the process of converting the Leland Property to a condominium complex however that process has stalled due to lack of funds and the

1  failure of Bank of America to sign a preliminary map. The engineer working on the

2  project has left and a new one will have to be hired.

3

4  ### Class 2 - *Secured Claim of Bay Area Financial*

5  Claim/Collateral: Bay Area Financial has an estimated claim of $455,000 which is

6  secured by a second priority deed of trust on the Debtor's rental property located at 804 S.

7  Leland, San Pedro, CA (the "Leland Property").

8  Impaired/Not Impaired: The Class 2 Claim is impaired under the Plan.

9  Treatment: The obligation of the Debtor to Bay Area Financial on its Class 2 Claim

10  will be treated as unsecured and paid with the Class 15 creditors. The Debtor will do one

11  of two things with this debt and this property at the option of Bay Area Financial, Class 2:

12  He will transfer the Leland Property into a new LLC to be owned by himself and a new

13  investor; or, he will stipulate to relief from stay and allow Bay Area Financial to foreclose.

14  Comments:

15

16  ### Class 3 - *Secured Claim of Lori Chevalier*

17  Claim/Collateral: Lori Chevalier has an estimated claim of $100,000 which is

18  secured by a third priority deed of trust on the Debtor's rental property located at 804 S.

19  Leland, San Pedro, CA (the "Leland Property") and third priority deed of trust on the

20  Debtor's rental property located at 605 S. Pacific Ave., San Pedro, CA (the "Pacific

21  Property") .

22  Impaired/Not Impaired: The Class 3 Claim is impaired under the Plan.

23  Treatment: The obligation of the Debtor to Lori Chevalier on her Class 3 Claim

24  will be paid in monthly installments of $583 until paid in full. The first payment will be

25  made on April 1, 2010 and will continue every month thereafter on the first until April 1,

26  2015 at which time the loan will be paid in full. Until paid in full, the debt will accrue

27  interest at the fixed rate of 7% per annum.

28

**LAW OFFICES**
M. Jonathan Hayes

DEBTOR'S DISCLOSURE STATEMENT

1    <u>Comments</u>:    This creditor is unsecured as to the Leland Property and fully

2    secured as to the Pacific Property.

3

4    **Class 4 -** *Secured Claim of Banco Popular*

5    <u>Claim/Collateral</u>:  Banco Popular has an estimated claim of $516,000 which is

6    secured by a first priority deed of trust on the Debtor's rental property located at 623 W. 8th

7    Street, San Pedro, CA (the "8th Street Property").   The interest on the loan is adjustable

8    with a floor of 6%.  The Debtor was current on this loan on the petition date and has

9    remained current throughout this case.

10    <u>Impaired/Not Impaired</u>: The Class 4 Claim is impaired under the Plan.

11    <u>Treatment</u>: The obligation of the Debtor to Banco Popular on its Class 4 Claim will

12    be paid in monthly installments of $2,930 until paid in full.  The first payment will be

13    made on May 1, 2010 and will continue every month thereafter on the first until May 1,

14    2015 at which time the loan will be paid in full.  Until paid in full, the debt will accrue

15    interest at the fixed rate of 5.5% per annum.   Any arrearage will be added to the principal

16    balance and paid in full at the end of the original term of the loan.

17    <u>Comments</u>:   The property securing this lien, a six unit apartment building, which is

18    fully occupied, is valued by the Debtor at $1,080,000 as of the petition date.  On the

19    petition date, the Debtor was in the process of converting the 8th Street Property to a

20    condominium complex however that process has stalled due to lack of funds.  The

21    engineer working on the project has left and a new one will have to be hired.  The increase

22    in the value of the 8th Street Property after the conversion is speculative although the

23    Debtor believes the value will increase up to $1,385,000 based on an appraisal.

24    No new loan documents will be required.  The terms of the original loan will remain

25    except as modified herein.  The Debtor will continue to pay a monthly impound amount

26    sufficient to pay the property taxes.

27

28

**Class 5 -** *Secured Claim of Bay Area Financial*

Claim/Collateral:  Bay Area Financial has an estimated claim of $1,115,000 which is secured by a second priority deed of trust on the Debtor's rental property located at 623 W. 8th Street, San Pedro, CA (the "8th Street Property").   The interest rate on the loan is adjustable and is presently at 8.25%.

Impaired/Not Impaired: The Class 5 Claim is impaired under the Plan.

Treatment: The obligation of the Debtor to Bay Area Financial on its Class 5 Claim will be paid $760,000 in monthly installments of $3,483.  The first payment will be made on April 1, 2010 and will continue every month thereafter on the first day of each month until April 1, 2015 at which time the remainder will be paid in full.  Until paid as set forth herein, the debt will accrue interest at the fixed rate of 5.5% per annum.   The balance of the amount owed by the Debtor will be treated as unsecured and paid with the unsecured class.

Comments:    On the Effective Date, the loan will be cured and no longer in default. No new loan documents will be required.  The terms of the original loan will remain except as modified herein.

**Class 6** - *Secured Claim of One West Bank*

Claim/Collateral:  One West Bank, successor-in-interest to IndyMac Bank, has an estimated claim of $627,000 which is secured by a first priority deed of trust on the Debtor's rental property located at 448 W. 14th Street, San Pedro, CA (the "448 14th Street Property").

Impaired/Not Impaired: The Class 6 Claim is impaired under the Plan.

Treatment: The obligation of the Debtor to One West Bank on its Class 6 Claim will be paid $500,000 in monthly installments of $2,626.  Until paid in full, the loan will accrue interest at the fixed rate of 5.75% per annum.  The first payment will be made on May 1, 2010 and will continue every month thereafter on the first of each month until May

1, 2040.  The balance of the amount owed by the Debtor will be treated as unsecured and paid with the unsecured class.

Comments:    The property securing this lien is a four-plex, which is fully occupied. The property was appraised as of January 15, 2010 for $500,000 and is valued at that amount by the Debtor as of the petition date.

On the Effective Date, the loan will be cured and no longer in default.  No new loan documents will be required.   The Debtor will continue to pay a monthly impound amount sufficient to pay the property taxes.

**Class 7 -** *Secured Claim of One West Bank*

Claim/Collateral:  One West Bank, successor-in-interest to IndyMac Bank, has an estimated claim of $479,000 which is secured by a first priority deed of trust on the Debtor's rental property located at 239 W. 14th Street, San Pedro, CA (the "239 14th Street Property").

Impaired/Not Impaired: The Class 7 Claim is impaired under the Plan.

Treatment: The obligation of the Debtor to One West Bank on its Class 6 Claim will be paid $325,000 in monthly installments of $2,043.  The first payment will be made on May 1, 2010 and will continue every month thereafter on the first until May 1, 2040. The balance of the amount owed by the Debtor will be treated as unsecured and paid with the unsecured class.

Comments:    The property securing this lien, a tri-plex, which is fully occupied. The property was appraised as of January 15, 2010 for $325,000 and is valued at that amount by the Debtor as of the petition date.  The rear detached unit has been completely refurbished after the tenant was evicted for damages.  On the Effective Date, the loan will be cured and no longer in default.  No new loan documents will be required.  The terms of the original loan will remain except as modified herein.  The Debtor will continue to pay a monthly impound amount sufficient to pay the property taxes.

**Class 8 -** *Secured Claim of Chase Home Loans*

Claim/Collateral:  Chase Home Loans has an estimated claim of $815,000 which is secured by a first priority deed of trust on the Debtor's rental property located at 605 S. Pacific Ave., San Pedro, CA (the "Pacific Property").   The interest rate on this loan is adjustable with a floor of 6%.   The loan is not in default.

Impaired/Not Impaired: The Class 8 Claim is impaired under the Plan.

Treatment: The obligation of the Debtor to Chase Home Loans on its Class 8 Claim will be paid in full in monthly installments of $4,627.  The first payment will be made on April 1, 2010 and will continue every month thereafter on the first until April 1, 2020 at which time the balance will be paid in full.  Until paid in full, the debt will accrue interest at the rate of 5.5% per annum.   The arrearage will be added to the principal balance and paid in full at the end of the original term of the loan.

Comments:    The property securing this lien is a seven unit retail and office building that the Debtor values at $1,450,000.  No new loan documents will be required. The terms of the original loan will remain except as modified herein.  The Debtor will continue to pay $1,500 into the impound account to be used by Chase to pay the property taxes as they become due.

**Class 9 -** *Secured Claim of Phillip Schoenwetter*

Claim/Collateral:  Phillip Schoenwetter has an estimated claim of $100,000 which is secured by a second priority deed of trust on the Debtor's rental property located at 605 S. Pacific Ave., San Pedro, CA (the "Pacific Property").

Impaired/Not Impaired: The Class 9 Claim is impaired under the Plan.

Treatment: The obligation of the Debtor to Phillip Schoenwetter on his Class 9 Claim will be paid in full in monthly installments of $583 interest only until paid in full. The first payment will be made on April 1, 2010 and will continue every month thereafter

on the first until April 1, 2015.  Until paid in full, the debt will accrue interest at the rate of 7% per annum.   The arrearage will be added to the principal balance and paid in full at the end of the original term of the loan.

<u>Comments</u>:    On the Effective Date, the loan will be cured and no longer in default. No new loan documents will be required.  The terms of the original loan will remain except as modified herein.

### **Class 10 -** *Secured Claim of Peter Mitchell*

<u>Claim/Collateral</u>:  Peter Mitchell, the Debtor's brother, has an estimated claim of $100,000 which is secured by a third priority deed of trust on the Debtor's rental property located at 605 S. Pacific Ave., San Pedro, CA (the "Pacific Property").

<u>Impaired/Not Impaired</u>: The Class 10 Claim is impaired under the Plan.

<u>Treatment</u>: The obligation of the Debtor to Peter Mitchell on his Class 10 Claim will be paid in monthly installments of $750 until paid in full.  The first payment will be made on April 1, 2010 and will continue every month thereafter on the first until April 1, 2015.  Until paid in full, the debt will accrue interest at the rate of 7% per annum.   The arrearage will be added to the principal balance and paid in full at the end of the original term of the loan.

<u>Comments</u>:    On the Effective Date, the loan will be cured and no longer in default. No new loan documents will be required.  The terms of the original loan will remain except as modified herein.

### **Class 11 -** *Secured Claim of One West Bank*

<u>Claim/Collateral</u>:  One West Bank has an estimated claim of $1,532,000 which is secured by a first priority deed of trust on the Debtor's residence located at 3609 Seahorn Dr., Malibu, CA (the "Residence").   The loan is in arrears four monthly payments.  The regular monthly payments on this loan are $9,187 and the interest rate is 5.75%.

<u>Impaired/Not Impaired:</u> The Class 11 Claim is not impaired under the Plan.

<u>Treatment</u>: The obligation of the Debtor to One West Bank on its Class 11 Claim will be paid according to the original terms.  The arrearage will be cured on or before the Effective Date.

<u>Comments:</u>    This property was appraised as of January 15, 2010 at $1,450,000. On the Effective Date, the loan will be cured and no longer in default.  No new loan documents will be required.  The terms of the original loan will remain except as modified herein.

**Class 12 -** *Secured Claim of One West Bank*

<u>Claim/Collateral:</u>  One West Bank has an estimated claim of $209,000 which is secured by a first priority deed of trust on raw land owned by the Debtor in Topanga.

<u>Impaired/Not Impaired:</u> The Class 12 Claim is impaired under the Plan.

<u>Treatment</u>: The obligation of the Debtor to One West Bank on its Class 12 Claim will be paid $175,000 in monthly installments of $729 until paid in full.  The first payment will be made on April 1, 2010 and will continue every month thereafter on the first until April 1, 2015.  Until paid in full, the debt will accrue interest at the rate of 5% per annum.

<u>Comments:</u>    On the Effective Date, the loan will be cured and no longer in default. No new loan documents will be required.  The terms of the original loan will remain except as modified herein.

**Class 13 -** *Secured Claim of Los Angeles County Tax Assessor*

<u>Claim/Collateral:</u>  Los Angeles County Tax Assessor has an estimated claim of $101,083.83 according to its proof of claim filed on or about December 17, 2009.

<u>Impaired/Not Impaired:</u> The Class 12 Claim is impaired under the Plan.

<u>Treatment</u>: The obligation of the Debtor to Los Angeles County will be paid in full in monthly installments of $1,985.00.  This amount will be adjusted by payments that are

made otherwise to impound accounts sufficient to pay the taxes on certain properties and

by the amount owed on Leland if that property is surrendered.


**Class 14** – *Priority Unsecured Claims*

Claims: Certain priority claims specified in Sections 507(a)(3), (4), (5), (6), and (7)

of the Bankruptcy Code are required to be classified in the Plan.  Each class of priority

claims must be paid in cash in full on the Effective Date of the Plan unless the holders of

such claims vote, as a class, to accept deferred payments.  In the present case, the Debtors

estimate that there are no such priority claims.  However, if such claims arise they will be

treated as follows:

Impaired/Not Impaired:  Class 14 Allowed Priority Claims are not impaired under

the Plan.

Treatment:    On the Effective Date, the holders of Class 13 Priority Claims will be

paid in cash in full the allowed amount of each Class 6 Priority Claim.


**Class 15** – *Unsecured Claims*

Claims: General unsecured claims are unsecured claims not entitled to priority

under Code Section 507(a).  In the present case, the Debtor estimates that there are total

unsecured claims of $1,400,000.  Of this amount, $367,000 allegedly owed to Duni and

Steel and $270,000 owed to Suzy Frank are contingent, that is, both debts arise out of the

Masjedi transaction and are owed by Shannon Masjedi to the creditors.  To this total must

be added the unsecured portions of the secured claims as follows:   Bay Area, class 5,

$281,000;  One West Bank, class 6, $127,000;   One West Bank, class 7, $154,000;  One

West Bank, class 12, $34,000; Wells Fargo Bank on home, $480,000; Bank of America,

second on 448 W. 14th St, $91,517.  Thus the total unsecured creditors could be as high as

$2,476,000 but is expected by the Debtor to be about $1,830,000.

<u>Impaired/Not Impaired</u>: Class 15 Allowed General Unsecured Claims are impaired under the Plan.

<u>Treatment</u>: Holders of General Unsecured Claims will be paid pro-rata the sum of $2,300 for the first 12 months after the Effective Date; $3,800 for the following 24 months and $5,000 for the remaining 24 months for a total of $238,800 or 13% of total claims without Suzy Frank and Duni Steele.

### Class of Interest Holders

### <u>Class 16</u> – Debtor

The Debtor and his wife will retain their ownership interest in their properties.

### F.   MEANS OF PERFORMING THE PLAN

*1.   Funding for the Plan*

The Debtor will pay the obligations set forth under this plan from his business income and from rental income he and his wife receive from rental properties.  The transfer/abandonment of Leland will remove a significant burden, as will the settlement of litigation.  The Debtor's new business is well positioned and his history of earnings is very solid.  This reorganization will allow for an increased focus in his twenty-three year mortgage specialty.

*2. Management of the Reorganized Debtors*

The Debtor will continue to manage his business and properties.

*3.   Disbursing Agent*

Kenneth R. Farrow shall act as the disbursing agent for the purpose of making the distributions to Class 15 provided for under the Plan.  The Disbursing Agent shall receive 10% of the monthly payment as compensation.

*4. Distributions*

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.  Notwithstanding any other provisions of the Plan, no distributions will be made on account of claims in de minimis amounts of less than $50.00.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be revested in the Reorganized Debtors, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred

## G.  RISK FACTORS

Since the Plan contemplates payments to certain classes of creditors over time following the Effective Date, it is possible that the Debtor will not have sufficient cash flow to pay all of the obligations created under the Plan.  The Debtor is employed by his own corporation, essentially self-employed and it is possible that there may not be sufficient earnings in the future to pay the obligations provided under the plan.

## H.  OTHER PROVISIONS OF THE PLAN

1.  Executory Contracts and Unexpired Leases

   a. Assumptions

The Debtor does not believe that he has any executory contracts or leases.

The Debtor reserves the right to modify the Plan to designate additional contracts or leases to be assumed at any time prior to the hearing on Confirmation of the Plan.

On the Effective Date, each of the unexpired leases and executory contracts so designated shall be assumed as obligations of the Reorganized Debtor.  The Confirmation Order shall constitute an Order approving the assumption of each lease and contract.  If you are a party to a lease or contract to be assumed and you object to the assumption of

your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

b.  Rejections

Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date.  The Debtor reserves the right to modify the Plan to designate certain contracts or leases for rejection at any time prior to the hearing on confirmation of the Plan.

The order confirming the Plan shall constitute an order approving the rejection of such leases and contracts.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

## 2.  CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL

The Debtors are not subject to governmental regulatory commission approval of their rates.

## 3.  RETENTION OF JURISDICTION.

The Court will retain jurisdiction to the fullest extent provided by law.

# I.  TAX CONSEQUENCES OF THE PLAN

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. THE FOLLOWING DISCLOSURE OF POSSIBLE TAX CONSEQUENCES IS INTENDED SOLELY FOR THE PURPOSE OF ALERTING READERS ABOUT POSSIBLE TAX ISSUES THIS PLAN MAY PRESENT TO THE DEBTOR.  THE PROPONENTS CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES CONTAINED BELOW ARE THE ONLY TAX CONSEQUENCES OF THE PLAN BECAUSE THE TAX CODE EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE COMPLETELY AND ACCURATELY ALL THE TAX IMPLICATIONS OF ANY ACTION.**

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on his tax liability.  The Debtor makes no representations regarding the potential tax consequences to creditors.

# IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

## A.  WHO MAY VOTE OR OBJECT

*1.  Who May Object to Confirmation of the Plan*

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

*2.  Who May Vote to Accept/Reject the Plan*

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

*a.  What Is an Allowed Claim/Interest*

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS *FEBRUARY 10, 2010.***  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibit "C" to see how the Debtors have characterized your claim or interest.

b.  *What Is an Impaired Claim/Interest*

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that all Classes except class 11 and class 14 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Proponents believe that classes 11 and 14 are unimpaired and that holders of claims of that class therefore do not have the right to vote to accept or reject the Plan.  Parties who dispute the Proponents' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponents have incorrectly characterized the class.

3.  *Who is <u>Not</u> Entitled to Vote*

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in this Article.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

### 7. Treatment of Non-accepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

*8.   Request for Confirmation Despite Non-acceptance by Impaired Classes*

The Proponents will ask the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

## B.  LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reason:

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.  In this

case, the trustee's compensation is estimated to equal $25,000.  The trustee is also likely to retain counsel and accountants which are estimated to cost about $50,000.

Debtor's schedules A and B, as amended for the purposes of this Disclosure Statement, are attached hereto as part of **Exhibit A**.  On each schedule, Debtor has added the liquidation value of each asset on these schedules (to the extent different from the value stated on the schedules when the petition was filed).  Under this liquidation analysis:

Total Liquidation Value of Debtor's non-exempt Assets:

| | |
|---|---|
| 605 S. Pacific | $350,000 |
| Personal Property | 80,000 |
| Less Selling costs (8%) | 34,000 |
| Less estimated Chapter 7 trustee expenses | 75,000 |
| Less Administrative Claims and | 60,000 |
| Priority Tax Claims | |
| Less Other Priority Claims | -0- |
| Liquidation value available to general unsecured creditors | $261,000 |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION:    = 12%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:        = 12%**

| CLAIMS  &  CLASSES | PAYOUT  PERCENTAGE UNDER  THE  PLAN |
|---|---|
| Administrative Claims | 100% |
| Class 1 BAC Home Loans | 100% |
| Class 2 Bay Area Financial Mortgage | 0% |
| Class 3 Lori Chevalier | 100% |

| Class 4  Banco Popular | 100% |
|---|---|
| Class 5 Bay Area Financial Mortgage | 100% |
| Class 6 One West Bank | 100% |
| Class 7 One West Bank | 100% |
| Class 8  Chase Home Loans | 100% |
| Class 9  Phillip Shoenwetter | 100% |
| Class 10  Peter Mitchell | 100% |
| Class 11 One West Bank | 100% |
| Class 12 One West Bank | 100% |
| Class 13 Los Angeles County | 100% |
| Class 14  Priority Creditors | 100% |
| Class 15 Unsecured creditors | 12% |
| Class 16  Debtor | Retain interest |

## 1.  FEASIBILITY

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied.   The only cash required on the Effective Date is payment of the Debtors' attorneys fees which will be paid in full upon their approval by the Court.  That amount is estimated to be $60,000 which the Debtor expects to have on hand.

The Debtor believes that he will have sufficient cash on hand in order to meet his obligations under the Plan.

The second aspect considers whether the Reorganized Debtors will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor has provided a budget in **Exhibit B** which sets forth the required income and expenses to meet the obligations under the Plan.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

## VI.  EFFECT OF CONFIRMATION OF PLAN
## 1.  DISCHARGE

This Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, the discharge will not discharge any liability imposed by the Plan.  The discharge will not be entered until the Debtor has made all of the payments required to be made to the Class 15 creditors under the plan.

## 2.   REVESTING OF PROPERTY IN THE DEBTORS

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtors.

From and after the Effective Date, the Reorganized Debtors may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and are free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Reorganized Debtors shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the

Debtors had immediately prior to the Petition Date as fully as if the Debtors' bankruptcy case had not been commenced; and all of the Reorganized Debtors' legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

### 3.  MODIFICATION OF PLAN

The Proponent may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### 4.  POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF REORGANIZED DEBTORS' PROFESSIONALS

After the Confirmation Date, the Reorganized Debtors may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as it may desire to render services on such terms as it deems reasonable.  With respect to services rendered by the Post-confirmation Professionals, the Reorganized Debtors shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court

### 5.  POST-CONFIRMATION STATUS REPORT

Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtors shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have

requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

## 6.  POST-CONFIRMATION CONVERSION/DISMISSAL

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

## 7.  FINAL DECREE

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtors, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date:    4/15/10

Ian F. Mitchell, Debtors and Debtors-in-Possession

Name of Plan Proponent

/s/  M. Jonathan Hayes

Signature of Attorney for Plan Proponent

1

## **SUPPORTING DECLARATION**

2

3        I, Ian F. Mitchell, declare as follows:

4    1.    I have personal knowledge of the facts set forth below and, if called to testify,

5    would and could competently testify thereto.

6    2.    I am the Debtor in this case.

7    3.    I have reviewed the information within the Disclosure Statement, including all

8    financial information.

9    4.    I believe that all information contained in the Disclosure Statement is true and

10    correct and fairly presented, to the best of my knowledge.

11

12            I declare under penalty of perjury under the laws of the United States of

13    America that the foregoing is true and correct.

14

15

16    Executed this 15th day of April, 2010, at Northridge, California.

17

18

19                                    _____/s/  Ian F. Mitchell_____
                                      Ian F. Mitchell
20

21

22

23

24

25

26

27

28

DEBTOR'S DISCLOSURE STATEMENT

## EXHIBIT A - LIST OF ALL ASSETS

## REAL PROPERTY

The Debtor and his wife own the following real estate:

| Property address | FMV | Liens |
|---|---|---|
| 804 S. Leland St., San Pedro<br>4 residential units | $760,000 "as is" | 1st: B of A; $996,000<br>2nd: Bay Area; $455,000<br>3rd: Lori Chevalier; $100,000 (cross-collateralized w/ 605 Pacific)<br>**EQUITY: -0-** |
| 623 W. 8th St., San Pedro<br>6 residential units | $1,080,000 "as is" | Banco Popular; $516,000 (Current)<br>Bay Area; $1,115,000<br>Lori Chevalier; $97,500 1)<br>**EQUITY: -0-** |
| 448 W. 14th St, San Pedro<br>4 residential units | $500,000<br>Appraised on 1/15/10 | IndyMac; $627,000 (current)<br>B of A; $92,000<br><br>**EQUITY: -0-** |
| 239 W. 14th St, San Pedro<br>3 residential units | $325,000<br>Appraised on 1/15/10 | IndyMac; $479,000 (current)<br>Peter Mitchell; $10,000 2)<br><br>**EQUITY: -0-** |
| 605 S. Pacific Ave., San Pedro,<br>7 commercial units | $1,450,000 | Chase Home Loans; $795,000 (current)<br>Phillip Schoenwetter; $100,000<br>Peter Mitchell; $100,000<br>Lori Chevalier; $100,000<br>**EQUITY: $350,000 before selling costs** |

| 3609 Seahorn Dr., Malibu Debtor's residence | $1,450,000 | IndyMac; $1,500,000 (current) Wells Fargo; $480,000 (one pymt past due) **EQUITY -0-** |
| Raw Land, Topanga | $175,000 | IndyMac; $209,000 **EQUITY -0-** |
| 1100 Berkeley, Marina Del Rey, CA, SFR | | This property is owned by 1100 Berkeley, LLC which is owned by Mam Wealth Real Estate Fund I, LP. The Debtor is on title as 100% owner. He executed a deed transferring the property to the LLC two years ago but it has not been recorded. **EQUITY -0-** |
| 1217 Centre, San Pedro, SFR | | This property is owned by the Debtor's brother. The Debtor is on title as to 50% only to facilitate a 1031 exchange by the brother. |

## **CORPORATE ENTITIES**

| Name of Entity | FMV | Business and status |
|---|---|---|
| Mitchell Group Partners, LLC | -0- | This is a newly formed entity which had about $30,000 in cash on April 14, 2010. |
| I F Mitchell Mortgage, Inc. owns 100% | -0- | This entity is defunct. It has a bank account but no other assets; no employees. It has no value. |
| Serious Music, LLC | -0- | This entity owns the rights to certain music |

| | | |
|---|---|---|
| Owns 100% | | with unknown value but believed to be very small; this entity has not operated for several years. It has no employees and no debts. |
| Luly, LLC<br>Owns 100% | -0- | This entity makes and sells aerobics videos. It is operated by the Debtor's wife. It has no employees other than Maria Mitchell. |
| Mam Wealth Real Estate Fund I, LP<br>The general partner of this entity is MAMWRE Fund, LLC. The debtor is a member of that LLC and owns 10%. | -0- | This entity owns a group of LLCs which in turn own various properties. The Debtor is not active in the day to day operations of the business. |
| 1255 No. Bundy, LLC<br>Debtor is the managing member and one of two members. His membership interest is 51%. | -0- | This entity owns a single family residence located at 1255 No. Bundy in Brentwood, CA. The property requires significant remediation to the front and rear slopes. The property is worth significantly less than the mortgages against it. The entity owns no other assets. |
| | | |

## **OTHER ASSETS**

| | | |
|---|---|---|
| Cash in Bank – DIP accounts | 30,000 | $20,000 claimed exempt under wildcard CCO 703.140(b)(5) |
| Life Insurance | 40,000 | Cash surrender value, $20,000 claimed exempt |

| | | |
|---|---|---|
| IRA with Mam Wealth | 300,000 | Fully exempt |
| 401(k) | 96,000 | Fully exempt |
| Guitar collection and artwork | 50,000 | |
| Investment in MAM Wealth Real Estate Fund I | -0- | |
| Promissory Note – Tom Creed | -0- | uncollectible |
| 2009 GL 550 Mercedes Benz lease | -0- | No equity |
| 2010 Mercedes Benz lease | -0- | No equity |
| Furniture and personal effects | | Fully exempt |
| Net Value after exemption | 80,000 | |

1 | EXHIBIT B – PROJECTED DISPOSABLE INCOME

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT C

## LIST OF CREDITORS/CLAIMS

| NAME | INS* | Class | SC* AMT* | SC* D/C/U* | FC* CLAIM# | FC* AMT* | OBJ* |
|---|---|---|---|---|---|---|---|
| Banco Popular | | | $516,225.49 | | 22 | $513,071.38 | |
| Bof A Home Loans | | | $996,750.00 | | | | |
| Bof A Home Loans | | | $91,517.73 | | | | |
| Bay Area | | | $455,000.00 | | 20 | $465,052.00 | |
| Bay AreaBAC | | | $1,115,000.00 | | 10 | $1,008,577.84 | |
| Chase | | | $794,635.10 | | | | |
| IndyMac | | | $1,500,000.00 | | 11 | $1,513,196.19 | |
| IndyMac/Deutsche | | | $209,268.36 | | 15 | $212,768.49 | |
| IndyMac/OneWest | | | $626,804.00 | | 4 | $635,503.73 | |
| IndyMac/OneWest | | | $479,000.00 | | 25 | $490,267.87 | |
| LA County Tax Collector | | | Unknown | | 9 | $101,083.83 | |
| Mercedes-Benz Financial | | | Unknown | | | | |
| Chevalier 2003 Trust | | | $100,000.00 | | | | |
| Chevalier 2003 Trust | | | $100,000.00 | | | | |
| Peter Mitchell | | | $100,000.00 | | 17 | $101,560.00 | |
| Schoenwetter | | | $100,000.00 | | | | |
| Wachovia | | | Unknown | | | | |
| Wells Fargo | | | $479,985.92 | | 5 | $48,457.00 | |
| 1st Bank Yuma | | | $250,000.00 | | 18 | $250,000.00 | |
| April Corley | | | $45,000.00 | | | | |
| Arkin, Sneddon & Co. | | | $1,114.00 | | | | |
| Bof A | | | $21,905.63 | | | | |
| B of A | | | $16,428.13 | | | | |
| Duni & Steele | | | $357,141.83 | D | | | |
| Chase Mastercard | | | $16,389.30 | | 3 | $16,312.60 | |
| C. Swenson | | | $3,000.00 | | | | |
| City National Bank | | | $92,347.75 | | 6 | $91,781.41 | |
| City National Bank | | | $23,202.96 | | | | |
| Daniel Cheren, Esq. | | | Unknown | | | | |
| Divers. Risk Mgmt, Inc. | | | Unknown | D | | | |
| Hart, Waters & Carter | | | $12,562.00 | | | | |
| Harvey A. Goodman | | | $17,000.00 | | 16 | $17,163.70 | |
| Home Depot | | | $11,411.69 | | | | |
| IndyMac | | | Unknown | D | | | |
| Alan Rader | | | Unknown | D | 23 | $1,500,000.00 | X |
| Gilchrist & Rutter | | | $64,979.99 | | 12 | $64,933.00 | |
| L. J. Dreyfuss | | | Unknown | | | | |
| MAM Wealth | | | Unknown | | | | |

| NAME | INS* | IMP* | SC* AMT* | SC* D/C/U* | FC* CLAIM# | FC* AMT* | OBJ* |
|------|------|------|----------|------------|------------|----------|------|
| Marketing & Fin. Mgmt | | | $1,016.00 | | | | |
| Noels Pools | | | $939.00 | D | | | |
| RBZ Investment | | | $60,000.00 | | | | |
| R. Kolodziej | | | Unknown | D | 24 | $438,002.00 | |
| Schmitz & Associates | | | Unknown | D | 8 | $170,492.41 | |
| Masjedi | | | Unknown | D | | | |
| Frank | | | $270,000.00 | | 13 | $270,000.00 | |
| Verizon | | | $654.48 | | | | |
| Whitson Engineers | | | $504.00 | | | | |
| City National Bank | | | | | 1 | $1,557.39 | |
| Chase Bank | | | | | 2 | $9,141.12 | |
| IRS | | | | | 7 | $244,989.00 | |
| T. L. Watters, Esq. | | | | | 14 | $13,011.00 | |
| IndyMac | | | | | 19 | $2,624,920.80 | |
| Bay Area | | | | | 21 | $1,150,343.00 | |

INS = Insider
IMP = Impaired     SC = Scheduled Claims
D/C/U = Disputed, Contingent, Unliquidated
AMT = Amount      FC = Filed Claims
OBJ = Objection

LAW OFFICES
M. Jonathan Hayes

DEBTOR'S DISCLOSURE STATEMENT

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:  9700 Reseda Blvd., Ste 201, Northridge, CA 91324.

The foregoing document described as **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 4/20/10 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Arturo M Cisneros    arturo@mclaw.org
  Scott C Clarkson    sclarkson@lawcgm.com
  Nicolas A Daluiso    ndaluiso@robinsontait.com
  Christine M Fitzgerald    cfitzgerald@lawcgm.com
  M Jonathan Hayes    jhayes@polarisnet.net
  Yale K Kim    ykim@allenmatkins.com
  Kary R Kump    dolores@jfarley.com
  Mitchell B Ludwig    mbl@kpclegal.com
  David F Makkabi    cmartin@pprlaw.net
  Eve A Marsella    emarsella@lawcgm.com
  S Margaux Ross    margaux.ross@usdoj.gov
  United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
  Craig A Welin    cwelin@frandzel.com, efiling@frandzel.com;smargetis@frandzel.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On 4/20/10,  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Hon. Geraldine Mund**
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

John A Crose
Isaacs Clouse Crose & Oxford
21515 Hawthorne Boulevard Suite 950
Torrance, CA 90503

Byron Fuentes
City of Los Angeles
221 N Figueroa St Ste 400
Los Angeles, CA 90012

LAW OFFICES
M. Jonathan Hayes

DEBTOR'S DISCLOSURE STATEMENT

Robert Hindin
11400 W Olympic Blvd #1510
Los Angeles, CA 90064

Cynthia Martin
29350 W Pacific Coast Highway Ste 12
Malibu, CA 91364-6512

Service information continued on attached page

### III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 4/20/10 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/20/10    MJ Hayes | | /s/ MJ Hayes |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |